Page number 23-1712. Javari Stafford, Avalanche v. George Washington University. Ms. Knapp for the Avalanche, Mr. Schwartz for the Avalanche. Javari Stafford's hostile environment claims are timely because a three-year statute of limitations applies to Title VI claims brought in the District of Columbia. When a federal civil rights statute does not include a limitations period, courts borrow from the most appropriate state statute limitations. This borrowing inquiry must consider both the substantive and procedural characteristics of the relevant federal and state laws, as well as federal interests in predictability, simplicity, and minimizing litigation. We know that the procedural comparison is critical from the Supreme Court's decision in Burnett and this court's decision in Banks. And procedurally, the DCHRA's private cause of action has little in common with Title VI's, even though both laws include a private cause of action aimed at eliminating discrimination. And that's because when the D.C. Council set a one-year statute of limitations for the DCHRA's private cause of action, it emphasized efficiency concerns that often characterize administrative remedials. How do you know that? Is there a legislative history that supports that? There is legislative history. What is it? There's legislative history that supports that that we rely on in our reply brief, but we also we don't even need the legislative history here because it's in the text of the DCHRA provision adding the statute of limitations that there's a tolling provision that says that filing an administrative complaint tolls the judicial limitations period. So a DCHRA plaintiff can add years to the time they have to prepare for a lawsuit and to accomplish all of the tasks that the Supreme Court in Burnett describes as involved in remedying injuries in court, simply by filing this form complaint with the D.C. Office of Human Rights. Is there anything I know under Title VI individuals who believe they're discriminated against in federally funded programs? That's what Title VI is all about. They can file a complaint with the Department of Education, right? Are there any cases that talk about whether the statute of limitations is told for that period of time? The statute of limitations is not told when an individual files a complaint with OCR. Is there a case that says that? There's not a case that I'm aware of that talks about the lack of tolling, but we know, for example, from Cannon and from Sandoval, that the administrative remedies are entirely distinct from the private cause of action here. And so, for example, Justice Scalia talks about in Sandoval how the administrative remedies are, quote, twice removed from the individual who is actually seeking relief through the private cause of action. And GW makes this point for Stafford when it argues that he could have filed a complaint with OCR, which in turn could have sought to terminate funding to the men's tennis team. But that would have been no help to my client who wanted the benefit of playing on GW's tennis team without daily racial harassment and humiliation. And so turning to the substantive comparison between DCHRA and Title VI, the substantive comparison doesn't make the DCHRA an appropriate analog in light of the procedural mismatch. And in any case, distilling the essence of a Title VI claim reveals that it is best characterized as a personal injury action. And that's because the Supreme Court has repeatedly explained that invidious discrimination is a fundamental injury to personal rights. And Wilson and Goodman and Owens also emphasize these federal interests in uniformity, certainty, and the minimization of unnecessary litigation, all of which support the simple approach of choosing the personal injury statute of limitations that the parties here initially agreed applied to Title VI claims. And so it makes sense why courts have repeatedly borrowed from personal injury limitations periods for anti-discrimination statutes, concluding that it's unlikely that the limitation period for personal injury actions would be inconsistent with the remedial goals and policies of federal civil rights statutes. So is your point about being inconsistency that it's inconsistent with the notion that there's no administrative remedy under Title VI?  It's inconsistent that there's no administrative remedy, but what's more important is that there's no tolling. Because the D.C. Council, when it was setting a one-year statute of limitations for the DCHRA's private cause of action, was doing so at the same time that it was setting this tolling provision in place, which would mean that an individual would have much more time to accomplish the tasks that Burnett lays out as involved in filing a complaint in court. So, for example, Burnett explains that when an individual is not seeking to redress discrimination through administrative remedies, the person must identify that they've suffered a legally cognizable injury, search for a routine and figure out how to pay for counsel, or, as in this case initially, prepare to proceed pro se, conduct enough investigation to draft pleadings that meet the requirements of the federal rules, establish the amount of damages, prepare legal documents, pay a substantial filing fee, and this list in Burnett goes on. And when the D.C. Council set the one-year statute of limitations for the DCHRA, it knew that someone would have likely far longer than one year to accomplish those tasks because they simply needed to file a form complaint with the D.C. Office of Human Rights to stop the clock on the statute of limitations for their private cause of action. Now, here, Stafford's student-on-student harassment claim is also timely because he filed suit within a year of experiencing a hostile educational environment that GW allowed to fester through deliberate indifference until January 2018 when my client left the school, and he filed suit within one year in November 2018. Now, hostile environment claims are different in kind than claims about discrete discrimination, which grew on the day that the Discriminatory Act occurs. For a hostile environment claim, all instances of harassment contribute to the discrimination claim, so the clock does not start on the claim when the hostile environment is ongoing. And so the clock did not start on the cause of action on which my client filed suit until he was no longer experiencing the harassment, and that was after January 2018. How does a continuing violation factor into your analysis? This is what I'm referring to now, that under Morgan, because my client experienced harassment through January 2018, the clock did not start on the statute of limitations until then. And so even if this court rules that a one-year statute of limitations applies, his student-on-student harassment claim is still timely. And here, there is no dispute that the environment which GW conceived constituted severe, pervasive, and objectively offensive harassment. It did not change from year to year. The types of acts were the same, constant use of racial epithets, including the N-word, porch monkey, and ape. This is JA3 at 880 and JA2 at 599. And racially fueled thots, this is JA3 at 936. And the harassers were the same. So although they added new teammates to their ranks, they were always led by team captain, CR. And there was no intervening act that can be attributed to the university that even attempted to change the atmosphere. So this means that the harassment was ongoing within the year that Stafford filed suit, and it's attributable to GW's ongoing inaction, and Stafford's claim is timely filed. Now, GW's argument that— I just had a question. I mean, so the district court here had an alternative ruling, right, said the one-year statute of limitations applied, but also did an analysis if a three-year statute of limitations were to apply. I mean, in your view, if we were to agree with you that there was a three-year statute of limitations, then what would be the appropriate disposition here? Would it be to remand to the district court? Yes, it would be to remand for further proceedings, and our assumption would be that those further proceedings would be in trial because the court has already explained how it would rule on the merits here. That being said, it's our view that our client's teacher-on-student harassment claim is also—would also— he'd also be entitled to bring that to trial because here there was notice to the university and deliberate indifference to that teacher-on-student harassment claim. Would we need to make a ruling about continuing violation? Not under the circumstances that a three-year statute of limitations applied, but in any case, again, here, the harassment continued until January 2018. My client filed suit within a year of that time. And also, to be clear, the deliberate indifference was also continuing through that time because the notice that GW had all the way going back to my client's freshman year was notice of the same hostile environment. And here, deliberate indifference, we have quintessential deliberate indifference, and that is a failure to act. And so that failure to act didn't occur on any particular day. This series of omissions continued through January 2018, and my client filed suit within a year. Do you understand GW's claim to not really challenge the harassment? That's right. We're here really on which statute of limitations? Which statute of limitations applies and whether or not GW acted with deliberate indifference. Any other questions? No. Thank you. Good morning, Your Honors. May I please support Jason Schwartz on behalf of George Washington University? Let me address the statute of limitations issue and the points that my colleague made. This analysis starts with Del Castello, where the Supreme Court has commanded the test is two parts. Before you get to your rationale, tell me about what was allegedly an agreement on those statute of limitations initially. In GW's motion to dismiss, we assumed that there was a three-year statute of limitations that applied. Judge Cooper considered the full three years' worth of allegations. He dismissed certain claims, did not dismiss others. In his ruling on the motion to dismiss, he pointed out that in his view, and I'll explain why that's correct, it was a one-year statute of limitations. So under Rule 12, when we answered the complaint, we asserted the one-year statute of limitations. It's not possible to waive that statute of limitations argument prior to filing an answer, as Judge Cooper found. That's where that comes from. Before you get into the – I see where you're going on your argument about the statute of limitations. I read your brief, but let me just ask you kind of a big-picture question about this. I mean, we've got these – we've got three Supreme Court cases here, Wilson, Goodman, and Owen. And they involve 1983 and 1981, two civil rights statutes. And the court says, look, these are – these civil rights laws, you know, that these civil rights laws are all – are all – for all of them, the proper statute of limitations is a personal injury statute of limitations. These are all – these are all personal injuries. And Title VI is exactly the same. And I don't see how, given those cases and the rulings for 1981 and 1983, how we could possibly distinguish Title VI. Understood, Your Honor. I think there's material – That's my big question. Yeah. I think there's a material distinction there, Judge Patel, and that is those cases are Reconstruction-era civil rights statutes where both this court in Banks and the Supreme Court in the cases you mentioned have said, essentially, there is no perfect state law analog because the whole point of those statutes is to capture a wide variety of conduct. And we need to be able to predict in advance what statute. The conduct could be anything from excluding jurors on the basis of their race to saying you can't bring a case in court on the basis of your race to providing negligent medical care to a prisoner, all sorts of conduct. Sounds like Title VI. Respectfully, Your Honor, it's not. Title VI is much more targeted. It's a spending clause statute on discrimination. Right, it is. But the type of discrimination that's captured under that is extremely broad. Your Honor, not in this – It is, and the courts have said that Title VI is a broad civil rights statute. It is, but not in the sense of the Reconstruction statute that are specifically – I don't know of any. I'm sorry, but it certainly can't be that 1981 and 1983 are Reconstruction era and this one isn't. Your Honor, the Supreme Court – This was passed in 1964. Absolutely, Your Honor. And the Supreme Court explained that the Reconstruction era statutes are designed specifically to override state power. Therefore, there is no state statute limitation that is easily analogous. Instead, we jump to the default personal injury that sweeps broadly. Here, when you look at any of the spending clause statutes, Title VI, Title IX, or the Rehabilitation Act, the trend in the cases is to say these are different, especially here in D.C. where you have a broad D.C. Human Rights Act that covers hostile educational environment. Hostile educational environment is much more like hostile educational environment than it is a car accident. The statute of limitations that Mr. Stafford proposes. And so, if you look at the cases, the D.C. Court of Appeals in JOA has said that. Four judges of the district court, Judge Nichols, Judge Cooper, Judge Bozeman, and Judge Colartatelli have said that. The Court of Appeals cases, circuit courts outside the D.C. Circuit that have looked at this question, where they have looked at spending clause statutes designed to capture discrimination and state law human rights statutes that capture the same kinds of discrimination. There are three cases that go our way, all from the Fourth Circuit, Wolski, McCullough, and Moore. Are those Title VI cases? Wolski is a Rehabilitation Act case. McCullough is Rehabilitation Act. And Moore is Title IX. So, all parallel spending clause statutes. My understanding is that all the circuits to decide this issue under Title VI have said that you should take a state personal injury statute. Is that? Not quite, Your Honor. So, there's only one Circuit Court of Appeals case that has compared Title VI to a state human rights statute. And that is Eggerdahl. The other cases are just looking at personal injury versus breach of contract or specific intentional torts versus general catch-all personal injury. The only two cases that look at either Title VI or Title IX and compare them to a state human rights statute and come out against us are Bogar. And in that case, the Court of Appeals said— I don't think that's right, Your Honor, because the Supreme Court specifically explained that the reason that those statutes require general personal injury is because they literally have a litany of all different fact patterns, some of which require intent, some of which don't. It could be anything from, you know, again, voting to other forms of discrimination to negligent health care. There's no way to shoehorn them. And the only Supreme Court case, actually, that addresses a state human rights statute is the case that addresses the Maryland human rights statute, which at that time did not provide for a private cause of action. So, it both had this Reconstruction Era element of much broader than the spending clause statutes, and it didn't have a state analog. Here, we have a state analog. Again, three of the five Courts of Appeals who have considered this fact pattern say that our answer is correct. And then if you look specifically at the D.C. Human Rights Act, which is exactly the inquiry that the Supreme Court has commanded, whatever other state statutes might say is really irrelevant to this. What does the D.C. Human Rights Act say? An apple is like an apple, not grapes, right? So, a claim for hostile educational environment is on all fours with the D.C. Human Rights Act, hostile educational environment, not a catch-all for car accidents. So, in your view, this ruling for you wouldn't create a totally lopsided circuit split? That's correct, Your Honor. I'm worried that you are very narrowly parsing what these other circuits have done. Well, I think, actually, it wouldn't create a circuit split at all because Del Castello has a very clear analysis the Supreme Court has told us. The Supreme Court cases do not direct the outcome here. Five cases, four judges in this circuit, district court judges, have concluded that these spending clause statutes are different. The D.C. Court of Appeals has concluded that the D.C. Human Rights Act is directly on point. If you look at the reply brief, page 8, the plaintiff concedes that Title VI and the D.C. Human Rights Act address similar substantive concerns. So the only way they get to a different answer is by flipping the analysis upside down and saying, well, the process is different. That, too, is actually not true. Both Title VI and the D.C. Human Rights Act provide the claimant with a choice. You can pursue the administrative remedy or you can go to court. You don't have to exhaust the administrative remedy. What counsel was saying this morning, under the D.C. Human Rights Law, if you do the administrative route, the statute of limitations is total. That is correct, Your Honor. Is that true for Title VI? I don't know the answer to that. The court has not addressed it. I think the answer is no. Would that change your view about this? It doesn't. And the reason that that is not dispositive, there are a couple reasons. Number one, as Your Honor may be aware, the administrative filing period with the Office for Civil Rights is 180 days. The statute of limitations we would be borrowing here from the directly on point D.C. Human Rights Act is one year. So a claimant would literally get double the amount of time. If 180 days is sufficient by federal judgment. Suppose the agency doesn't finish, suppose OCR doesn't complete the process within the one-year period. I would imagine that the claimant would have an argument at minimum for equitable tolling in those circumstances, Your Honor. It's a pretty risky place to rest your claims on equitable tolling. Again, I don't think that tolling is dispositive here, Judge, because if you look at the rule that I am advocating, which is literally the rule of Dale Costello, right? Look at these two statutes. Are their essence the same? And if the essence is the same, is there a federal policy that would be defeated? Obviously, a federal policy wouldn't be defeated by picking a one-year statute of limitations. Because, for example, in certain other states, the statute of limitations for personal injury is one year. So that can't be an overriding policy choice. In fact, in some states, the statute of limitations under the State Human Rights Act would be longer than the default statute of limitations for personal injury claims. So it's not an outcome-oriented thing here. One year is a reasonable period. And, in fact, you would ask, well, has the D.C. Human Rights Act and the D.C. Council considered this? The answer is yes, because subsequent to the D.C. Court of Appeals decision in Davis, the D.C. Council amended the Human Rights Act to add a one-year statute of limitations period for actions filed in court. So they made that judgment not just on the basis of administrative process, but as illustrated actually by the facts of this case. When discrimination cases get older, memories fade, evidence disappears, and justice is delayed. This is not a pro-defendant or pro-plaintiff rule. Isn't that true for a 1981 or a 1983 case also? That's certainly true, Your Honor. And, as I said, in some states, the statute of limitations for those causes of action would be one year. In 1981, there's a little footnote, as I'm sure you're aware. Subsequent to the Civil Rights Act of 1991, a federal statute of limitations was imposed for certain 1981 claims, but I don't think that's relevant to this consideration. So in Wilson, I want to ask you another question about Wilson. Yes, Your Honor. Wilson says that when looking at a question like this, we are to apply the statute of limitations, quote, or that, quote, that, quote, fairly serves the interests vindicated by the statute. So if we look at that, and if we have a choice between a one-year and a three-year statute, I mean, wouldn't a three-year statute – isn't it fairly obvious that a three-year statute would much more effectively vindicate, quote, here, fairly serve the interests vindicated by Title VI by ensuring that victims of discrimination in federally funded programs have a three-year statute of limitations, not a one-year statute of limitations? Not at all, Your Honor. No? In fact, first of all, the point of that statement in Wilson, as I understood it, was to say that the full scope of Section 1983 actions, as pointed out in Wilson, could include discrimination in public employment on the basis of the First Amendment, discharge or demotion without procedural due process, mistreatment of schoolchildren – I mean, wouldn't we – I'm sorry, I know that list, but wouldn't we – I just viewed his statement as Wilson as stating the obvious to a court, which is that you interpret a federal statute to accomplish its purposes consistent with its goals. That's what it's saying here. Your Honor, I don't disagree, although I think the – We do all the time. There are two points I would make to that. Number one, the point of Wilson was that it is a panoply of actions that don't neatly fit anywhere. Just focus on my question about interpretation. Yes, Your Honor. Forget that I asked you about Wilson. When we interpret a federal statute on a question like this, don't we try – one of the things we look at is what is the purpose of the statute? I don't disagree with that. Wouldn't a one-year statute, as opposed to a three-year statute, limit the effectiveness of Title VI, that is, the goals that Congress was trying to achieve with it? No, Your Honor. By forcing people to file their cases in a more limited period of time. Your Honor, I don't accept the premise that longer is better for plaintiffs. Remedy for discrimination should be swiftly provided. If you look at the sister statute, for example, Title VII, the claim has to be filed within 180 days or 300 in a state with its own parallel state agency. And again, if you borrow the statute of limitations for personal injury, in some states that would be one year. Or, if you look at this Court's decision in the case that involved the education of the Handicapped Act, it selected as the most appropriate statute under the Del Castello framework, the D.C. statute for appealing administrative orders, which was 30 days, Your Honor. So, longer is not always better for the plaintiffs. Hold on, I'll give that to you in just one moment, Your Honor. Don't tell me I wrote it. I'm sorry? It's not my opinion, is it? No, I'm serious. I just don't remember the case. What case are you talking about? Just one moment, Your Honor. I'll get that. Okay. I apologize. I thought I had that. You can send it later. Don't worry about it now. Oh, I'm sorry, Your Honor. It's the Spiegler case. And there, the Court chose a 30-day statute of limitations as opposed to three-year general personal injury because petitions for reviews of orders of the school district with respect to the education of disabled children, it was in the interest of the statute, both plaintiff and defendant, for those to be promptly disposed of. I would argue here, again, it's in the interest of all parties, particularly college students or students at a secondary or even primary education, that the claim of a hostile environment be dealt with swiftly and resolved. So that's in the interest of all parties. Again, I don't think the statute purposes— Well, the counsel for plaintiff in this case does not agree with that. I understand that, but this is not a results-oriented rule in each case. No, no, no. It's an application of Del Castello. But she's looking—her argument is that we're not just deciding this case. We're setting a rule for all of our cases under Title VI. And her argument is that a three-year statute of limitations more faithfully executes the purposes of Title VI. And the only way—first of all, I disagree that it faithfully executes the purposes. And if you look at Davis, the D.C. Court of Appeals made clear it wasn't just about administrative expediency, that discrimination cases should be dealt with promptly. That is a policy goal. And, again, if you apply the rule of personal injury statute of limitations, it just happens that in D.C. the car accident statute is longer. In other states, it could be a year or shorter. So if you faithfully apply the rule, as, again, with all the Spending Clause cases, three of five Court of Appeals decisions, Wolstey, McCullough, and more come out our way. Four judges in this district have all come out that way—Judges Nichols, Boasberg, Paul Arcatelli, and Cooper. And, again, what the plaintiffs are asking you to do—the plaintiffs are asking you to do is flip the inquiry on its head. Start with some sort of extra statutory reason as opposed to, are apples like apples? These statutes are the same. And do we need to do anything with the continuing violation theory? You don't, Your Honor. So I think Judge Cooper was clear that it did not apply in this case. But I think you don't even have to get there because Judge Cooper found, notwithstanding what you've heard in sort of a new case presented on appeal, that in accordance with the local rules, no acts were presented that took place during the statute of limitations period. That's reviewed for abuse of discretion, and it clearly was not an abuse of discretion for him not to permit consideration of those after the fact, not in the Rule 7 supposed quote-unquote facts. Thank you, Mr. Schwartz. Thank you, Your Honors. Ms. Smith, we'll give you two minutes. Thank you. I'd just like to address that forfeiture point. Nothing has been forfeited on the continuing violation argument. GW did not argue below that Stafford had failed to point to acts of harassment that occurred within one year of when he filed suit, or within three years of when he filed suit. Instead, it argued only that Stafford was required to point to acts that deliver indifference within the year before filing suit. And this makes sense that that was the only argument that GW made in its motion for summary judgment, because at the motion to dismiss stage, the district court had rejected GW's argument that it could not consider events outside the limitations period if Stafford pointed to an act of harassment occurring within one year of when he filed suit. And here, the record makes very clear that acts of harassment were occurring through January 2018 and might find filed suit less than one year later. So we know, for example, that during Stafford's senior year, the harassment, quote, intensified. This is JA3 at 936. And he consistently testified that the harassment occurred on an everyday basis and in everyday conversation. This is JA3 at 935. In any case, the court would not need to reach this issue if it agrees with Mr. Stafford that a three-year statute of limitations applies to Title VI claims in the District of Columbia. And for all of these reasons, we'd ask that the court reverse and re-enact further proceedings. Thank you. Thank you very much. The case is submitted.
judges: Rao, Childs, Tatel